SOMERS S. PRICE and MARGARET E. PRICE, complainants-respondents,

*v.*

ALBERT SAINSOT and LENA SAINSOT, defendants-appellants.

[Argued May 25th, 1928. Decided October 15th, 1928.]

1. The facts in the present case held to show abandonment by its parents of an infant child to the care of foster parents.

2. On the facts as found in the present case, *held*, that the best interests of the child require that it remain with the foster parents.

On appeal from a decree advised by Vice-Chancellor Ingersoll in a *habeas corpus* case.

*Mr. Carl Kisselman,* for the appellants.

*Mr. Emerson Richards,* for the respondents.

The opinion of the court was delivered by

PARKER, J.

This is a contest between natural parents and foster parents of a little girl seven years of age, for the custody of the child. The vice-chancellor awarded her to the natural parents, though it would seem from his remarks that he did so unwillingly, and made the award under what he deemed the compulsion of the law. The circumstances are peculiar. At the time of the child's birth, her mother, the complainant Margaret E. Price, was the wife of another man named Goos, had sued him for a divorce and had obtained a decree *nisi*. The child was placed in a hospital for several months, the defendant Lena Sainsot saw her there and fell in love with her, asked Mrs. Goos for her, and on December 10th, 1920, Mrs. Goos and Mr. Price went to Millville where the Sainsots

lived, saw them, arranged for the transfer of the child, and had a lawyer draw up a paper which is in evidence reciting some of the facts, and saying that "we * * * do hereby relinquish all our rights to the custody of said child, and do hereby place the same in the custody of said Albert Sainsot and wife, and do authorize and empower them to keep the said child in their custody, and to raise, educate and exercise the same control over said child as if she were a daughter of theirs of their own blood." They posed as husband and wife, according to their own testimony; they did not reveal the facts of the child's birth.

The child was left absolutely in the care of the foster parents for some years; the natural parents paid no attention to her, and made no contribution to her support; in short, they ignored her completely. Mrs. Goos received her divorce decree in June, 1921, but did not marry Price until October, 1923. If both were then legally free to marry, this gave the child a legitimate status. *P. L. 1915 p. 333.* Time went on till September, 1927, when for some reason the Prices changed their mind and concluded that they wanted the child; they asked for her, were refused, and brought the present proceedings, making the false statement (or plain implication) in the petition that they were married in November, 1920, at the time when they left the child with the Sainsots, saying that they made the arrangement "because, at that time, they did not care to have it publicly known that they were married or that the said Florence Helen Price was their child." Manifestly, this was false. The true reason obviously was that Mrs. Goos, as she then was, did not care to have it publicly known that she had had this child while her divorce suit was pending. And this is the natural and obvious explanation of the resort to a formal paper acknowledged before a master in chancery, which, as it happens, was invalid standing alone as a transfer of the right to the child, instead of following the advice of the lawyer who drew the paper, and carrying through an adoption proceeding contemplated by the statute, the objection to which was, of course, its necessary publicity.

It is clear that the child was abandoned. This appears not only from the conduct of the parents, which was considered sufficient in *Winans* v. *Luppie, 47 N. J. Eq. 302,* but as well from their solemn declaration in writing, acknowledged before a master in chancery. In fact, this is essentially the *Winans Case* with the addition of a sealed instrument. The facts are also somewhat similar to those in *Richards* v. *Collins, 45 N. J. Eq. 283* (at *p. 288*), where the child was born away from the mother's home and was left with and reared by relatives. In the *Winans Case,* in this court, Mr. Justice Dixon says (at *p. 305*) : "It does not follow that such a purpose [to abandon] may not be repented of, and in proper cases all parental rights again acquired, including this statutory right of preventing adoption by withholding consent; but when once the abandonment is shown to have existed, it becomes a judicial question whether it really has been terminated, or can be, consistently with the welfare of the child." In that case the decree was that the child remain with the foster parents.

The law applicable to the case is well settled and not in dispute. Normally, the parents of the legitimate child are entitled as against all others to its custody, unless it is shown that they are unfit. *Ziezel* v. *Hutchinson, 91 N. J. Eq. 325.* But the primary consideration is the welfare of the child. *Lippincott* v. *Lippincott, 97 N. J. Eq. 517.* And parents may, by abandonment, lose their right to a child. *Winans* v. *Luppie* and *Richards* v. *Collins, supra.* We conclude that in all three aspects the proper disposition of the case requires that the child be in the custody of her foster parents, the Sainsots—*first,* because the parents abandoned her and that abandonment was complete and should be now irrevocable, as already pointed out; *secondly,* we consider the parents are unfit to have this child. They are both confessedly guilty of the crime of adultery, for which they could have been sent to state prison. They are both apparently guilty of perjury in swearing to the petition, which falsely states that they were married when the child was born, and they have both been guilty of a continued neglect of the child for seven years, a fact which casts much discredit on their present protestations.

of parental affection.   It is not to be expected that by these years of selfish neglect of their own offspring and avoidance of the cares of parenthood, they have qualified to give this child the unselfish devotion to which it is entitled and which it has received from the foster parents.   And, *lastly,* we have no hesitation in concluding that the best and true interests of the child demand its continuance with the Sainsots.   There it has had the best of care and unlimited affection; the foster father is a respectable mason, making a bricklayer's wages, owning his own home, living quietly and naturally therein with his wife and foster child and attending properly to her rearing and education.   To affirm the decree under review would transfer the child to an apartment (not a beneficial habitat for any child) in the somewhat artificial and hectic atmosphere of a great watering place, exposed as she grows older to the manifold temptations characteristic of all such places, and under the care of a father who is out all day as a salesman and a mother who is out all day at her occupation of secretary to a city official.

For all these reasons we conclude that this child should be in the custody of the foster parents.   The decree under review will be reversed and the cause remanded with directions to enter a decree in conformity with this opinion.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, McGLENNON, KAYS, DEAR, JJ.   13.